22
ex A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:  REQUEST FOR LEGAL
ASSISTANCE FROM THE REPUBLIC
OF POLAND'S COMMISSION FOR
PROSECUTION OF CRIMES
AGAINST THE POLISH NATION

Case: 2:09-mc-50536
Judge: Friedman, Bernard A
MJ: Pepe, Steven D
Filed: 05-01-2009 At 01:12 PM
IN RE REQUEST FOR LEGAL ASSISTANCE
FROM POLAND (DA)

## PETITION TO APPOINT WILLIAM HENRY KENETY V AND PETER A. CAPLAN AS COMMISSIONERS FOR THE PURPOSE OF FULFILLING A REQUEST FOR LEGAL ASSISTANCE PURSUANT TO THE UNITED STATES-POLAND TREATY ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

The United States of America states as follows:

1.  William Henry Kenety V is a Senior Trial Attorney for the Office of Special Investigations, a component of the United States Department of Justice in Washington.  Peter A. Caplan is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Michigan.  Both are counsel for the United States of America (the "Government").  This Petition is submitted in support of the Government's request, pursuant to 28 U.S.C. § 1782(a), for an order appointing Mr. Kenety and Mr. Caplan as Commissioners for the purpose of interviewing Ivan/Johan/John Kalimun/Kalimon/Kalymon pursuant to a Mutual Legal Assistance Treaty ("MLAT") request from the Polish Commission for Prosecution of Crimes against the Polish Nation.[1]

2.  The Commission for Prosecution of Crimes against the Polish Nation issued a request for assistance in a criminal investigation ("Request") that was transmitted to the United States

---

[1] The English translation of the Polish Request refers to an "Ivan Kalimun" who served in the Ukrainian Police during World War II, and refers to him in the next sentence as "Johan Kalimon" now living in the United States. Mr. Kalimun/Kalimon was denaturalized in 2007 in this Court, and the case was captioned "John Kalymon," *United States v. Kalymon*, 2007 WL 1012983 (E.D. Mich. 2007), *aff'd*, 552 F.3d 371 (6th Cir. 2009).

Department of Justice and then forwarded to the Office of Special Investigations (OSI), which further transmitted the request to the United States Attorney for the Eastern District of Michigan. The Request seeks certain information to be obtained pursuant to the MLAT between the Republic of Poland and the United States. It is the policy of the United States Government to cooperate with the Republic of Poland, and other nations, on requests for judicial assistance. True and correct copies of the Request, with official translations, are attached as Exhibit A.

    3. Under 28 U.S.C. § 1782(a), federal district courts are granted the authority to take testimony and obtain documents and tangible evidence for use in a foreign proceeding. Section 1782(a) provides, in pertinent part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other things for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other things produced, in accordance with the Federal Rules of Civil Procedure.

*See In re Commissioner's Subpoenas*, 325 F.3d 1287 (11th Cir. 2003) (an MLAT treaty request utilizes §1782 as a procedure for executing requests).

    4. Government counsel has conferred with Elias Xenos, Esq., counsel for Mr. Kalimun/Kalimon/Kalymon, in an attempt to arrange for his client's voluntary attendance at an interview. Mr. Kalimun/Kalimon/Kalymon has declined to voluntarily appear. Thus, in order to

obtain the requested information, it will be necessary to issue a subpoena to him.  A proposed

subpoena is attached to this Petition.  Mr. Xenos has stated that he would accept service on

behalf of his client.  It is possible that Mr. Kalimun's/Kalimon's/Kalymon's response to the

subpoena will require further subpoenas or interrogatories.

5. The United States therefore requests that this Court enter the attached order appointing

OSI Senior Trial Attorney William Henry Kenety V and Assistant United States Attorney Peter

A. Caplan as Commissioners for the purposes of this Request and granting each leave to issue

subpoenas or interrogatories as necessary to fulfill the MLAT Request by the Polish Commission

for Prosecution of Crimes against the Polish Nation.

Respectfully submitted,

TERRENCE BERG
United States Attorney

ELI M. ROSENBAUM
Director

ELIZABETH LARIN
Assistant United States Attorney
Chief, Civil Division

SUSAN L. SIEGAL
Senior Litigation Counsel

PETER A. CAPLAN
Assistant United States Attorney
United States Attorney's Office -
    Eastern District of Michigan
Suite 2001
211 West Fort Street
Detroit, Michigan 48226
(313) 226-9784
(fax) 226-3271
peter.caplan@usdoj.gov
(P30643)

WILLIAM HENRY KENETY V
Senior Trial Attorney
U.S. Department of Justice
Office of Special Investigations
Suite 200
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 616-2492
(fax) 616-2491
william.kenety@usdoj.gov

May 1, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2009, I filed the foregoing paper with the Clerk of the Court and that a true and correct copy of the foregoing United States' Petition to Appoint William Henry Kenety V and Peter A. Caplan as Commissioners has been served by facsimile transmission and by first class United States mail, postage prepaid, upon Elias Xenos, counsel for Ivan/Johan/John Kalimun/Kalimon/Kalymon, who has agreed to accept service on behalf of his client, at:

Elias Xenos, Esq.
MetroLaw, PLC Law Offices
Suite 350
37000 Grand River Avenue
Farmington Hills, Michigan 48335
telephone: (248) 442-0510
fax: (248) 498-6272
eliasxenos@metrolawfirm.com
P60729


Dated: May 1, 2009                        _Tracey H. Pyle_
                                          TRACEY H. PYLE
                                          Legal Assistant

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

## SUBPOENA

**TO**:   Ivan/Johan/John Kalimun/Kalimon/Kalymon

**YOU ARE HEREBY COMMANDED TO APPEAR BEFORE**  William Henry
Kenety V and Peter A. Caplan, officials of the United States Department of Justice and appointed
Commissioners pursuant to 28 U.S.C. § 1782, and you are hereby required to bring with you and
produce the following:

> all documents and records reflecting your activities and locations from 1939 to
> 1945; which are necessary in the performance of the responsibility of the
> Commissioners as appointed  pursuant to 28 U.S.C. § 1782.

**PLACE AND TIME FOR APPEARANCE:**
At the United States Attorney's Office located at Room 2001, 211 West Fort Street, Detroit,
Michigan 48226 on _____, 2009 at 9:30 a.m..

Failure to comply with the requirements of this subpoena will render you liable to
proceedings in the district court of the United States to enforce obedience to the requirements of
this subpoena, and to punish default or disobedience.

*IN TESTIMONY WHEREOF*

*the undersigned official of the U.S. DEPARTMENT
OF JUSTICE, has hereunto set her hand this*
_____ day of May, 2009

(SIGNATURE)







**REPUBLIC OF POLAND**
**MINISTRY OF JUSTICE**
**NATIONAL PROSECUTOR'S OFFICE**
**Bureau of International Legal Cooperation**
**Fax: 48 22 628-1682**

Warsaw, April  /6  2008

Our Ref. No. PR VI Oz 630/08/P

**Office of International Affairs**
**Criminal Division**
**Department of Justice**
**Bond Building, Suite 5100**
**1400 New York Avenue, N.W.**
**WASHINGTON  D.C.  20530**

Basing on article 1 of the Agreement between the Republic of Poland and the United States of America on legal assistance in criminal matters, dated 10 July 1996 please find enclosed the Letter of Request to the matter No. S 5/05/Zn,  issued by the Institute of National Remembrance, Rzeszów Branch Commission for the Prosecution of Crimes against the Polish Nation from March 4th, 2008 in case of Nazi crimes committed in Lvov on May and August 1942  –  together with this application English translation and I kindly request you to have it executed.

In response please quote the Reference No. PR VI Oz 630/08/P .

Sincerely yours,

Anna Adamiak

Director of Bureau
of International Legal Cooperation

Z ASTEPCA DYREKTORA
Biura Obrotu Prawnego z Zagranicą

Józef Gierła
Prokurator Prokuratury Krajowej

*Certified translation from Polish*

*Rectangular stamp:*
The Institute of National Remembrance
The Rzeszów Branch
Commission for the Prosecution of Crimes against the Polish Nation

S 5/04/Zn                                          Rzeszów, March 4, 2008

REQUEST
for legal assistance in criminal proceedings

The Institute of National Remembrance, Rzeszów Branch Commission for the Prosecution of Crimes against the Polish Nation is conducting investigation concerning:

1. The Nazi crime committed in Lvov on May 11, 1942 by participation in the transportation of unidentified number of Jewish people of unidentified personalities to the Pluhov forced labour camp for Jewish people;

2. The Nazi crime committed in Lvov on August 14, 1942 in the form of murder of one Jewish individual of unidentified personality and of attempted murder of one Jewish individual of unidentified personality;

3. The Nazi crime committed in Lvov on August 14, 1942 during an action organised against Jewish people, during which 12 Jewish people of unidentified personalities were murdered, 7 Jewish individuals of unidentified personalities were attempted to be murdered, while 2,128 Jewish people of unidentified personalities were stopped;

4. The Nazi crime committed in Lvov on August 20, 1942 during an action organised against Jewish people, during which 14 Jewish people of unidentified personalities were murdered and 6 Jewish individuals of unidentified personalities were attempted to be murdered, while 525 Jewish people of unidentified personalities were stopped;

5. The Nazi crime committed in Lvov on August 22, 1942 during an action organised against Jewish people, during which 12 Jewish people of unidentified personalities were murdered and 3 Jewish individuals of unidentified personalities were attempted to be murdered, while 805 Jewish people of unidentified personalities were stopped;

that is the act specified in the Decree of August 31, 1944 concerning the exercise of the punishment for Nazi-Fascist criminals guilty of the murder and cruel treatment of the civilian population and prisoners and for traitors of the Polish nation (*Dziennik Ustaw* /Journal of Laws/ No. 69, item 377 of 1946 as amended) in conjunction with Article 1 section 1 letter a of the legislative Act of December 18, 1998 on The Institute of National Remembrance, The Commission for the Prosecution of Crimes against the Polish Nation (*Dziennik Ustaw* /Journal of Laws/ No. 155 item 1016 as amended).

1

During the proceedings, we have acquired photocopies of the following documents:

- document no. 1, being a report by Head of Police Station of Ukrainian Police addressed to the Commander of Ukrainian Police, dated May 11, 1942, in which the head of the Police Station reported that Ivan Kalimun, Police Private and Petro Kowar, Police Private fired 6 pieces of ammunition each during the transportation of Jewish people from Lvov to Pluhov;

- document no. 2, handwritten, dated August 14, 1942, being a report in which the man subscribed as Kalimun reported that on that day, around 19.00 hours, he shot down one individual and wounded another one during the so-called action against Jewish population;

- document no. 3, being a report by Head of the 5th Police Station of Ukrainian Police addressed to the Commander of Ukrainian Police, dated August 14, 1942, in which the Head of the Police Station reported that, in the territory of operation of the Police Station, 2,128 Jewish people were stopped and next directed to am assembly point, 12 Jewish people were shot down and 7 ones wounded;

- document no. 4, being a report by Head of the 5th Police Station of Ukrainian Police addressed to the Commander of Ukrainian Police, dated August 21, 1942, in which the Head of the Police Station reported that, on that day, the Police brought 525 Jewish people to the assembly point, and during that action, shot down 14, wounding 6; among the policemen who used guns, shooting two bullets each, there was Kalimun;

- document no. 5, being a report of August 22, 1942, in which Head of the 5th Police Station of Ukrainian Police reported to the Commander of Ukrainian Police that 805 Jewish people were brought to the assembly point and during the action, 12 were shot down and 3 wounded; among the policemen who used guns there was Ivan Kalimun, who fired two bullets;

- document no. 6, being Ivan Kalimun's request dated April 18, 1944 for having his remuneration transferred to his mother, Anastasia Kalimon, residing in Komańcza, in the event of his absence in Lvov;

- documents 7 and 8, constituting the notifications of undertaking employment by Ivan Kalimun and Ivan Kalimon.

The above-said documents show that Ivan Kalimun, a policeman at the 5th Police Station of Ukrainian Police in Lvov took part in actions against Jewish people in Lvov in 1942.

In the course of proceedings, it was established that in the United States of America there lives Johan Kalimon, a policeman of the 5th Police Station in Lvov who was on service in the years 1942 – 1944.



2

Therefore, I kindly request legal assistance in the form of having Johan Kalimon, residing 1539 Devonshire Drive, Troy Michigan 48098, the United States of America, being US national, heard as a witness as regards the following circumstances:

- What locality did the witness live at till September 1939? What was the form of his surname at that time? Did he change it during the second world war? Why? (Let me add that an official copy birth certificate number 9/1921, drawn up at the Births, Marriages and Deaths Registration Office in Komańcza, has been provided to be included in the investigation files which shows Jan Kałymun born in Komańcza on May 16, 1921 as son of Teodor Kałymun and Nastia Suszko);

- What was his occupation before the beginning of the war? What school did he attend? At what locality?

- Whom did he live in Poland with? Give names and surnames. Who of his family members are now living in Poland? At what locality?

- Does he have any documents, e.g. his parents' birth certificates, their death certificates, school certificates, issued to his name before the beginning of the second world war or after its end?

- Does he have any document drawn up by himself during the second world war, or right after the war?

- When and why did he leave for Lvov?

- Where and with whom did he stay in Lvov?

- Did he perform service at the 5th Police Station of Ukrainian Police of the city of Lvov? During what period? What was his rank?

- Which street was the police station located at? Who was its commander? Can the witness remember the names and surnames of other policemen of that police station? Does he have a contact with them?

- When was the 5th Police Station transformed to the 7th Police Station? Did it change address? Who was appointed the commander of the 7th Police Station?

- What were the witness's responsibilities as policeman?

- Did another policeman, named Ivan and having a similar surname, Kalimun, perform service together with him?

- Where was the Lvov Jewish ghetto located? When was it formed? What did it look like inside? How many people lived there at the ghetto? Who was its commander? What were Ukrainian Police duties at the ghetto?

3

- Did the witness happen to be at the ghetto? What information did the witness have as regards the crimes committed on Jewish people at the ghetto? What living conditions did Jewish people have at the ghetto?

- Did he witness murders committed on Jewish people at the ghetto? Give the dates of murders, number of people murdered, names of the perpetrators.

- Did the witness participate in actions organized against Jewish people in Lvov during 1942? What actions did he take part in? Upon whose instructions? When? What did the actions involve?

- What information does the witness have as regards the forced labour camp for Jewish people in Pluhov? Did he happen to be at that locality? At that camp? What living and work conditions were there? How many Jewish people worked there?

- Who was the commander of the Pluhov camp? What other policemen does he know who were on service at that camp?

Please show the witness the document number 1 dated May 11, 1942 and ask him the following questions concerning Ivan Kalimun's participation in the transportation of Jewish people:

- Did he have a gun during his service?
- Does he know Petro Kowar? Did he perform police service in Lvov with him? Does he have information where the said individual is living now?
- Did the witness participate in the transportation of Jewish people from Lvov to the Pluhov camp on May 11, 1942?
- Did he use a gun? Did he fire 6 pieces of ammunition? Did Petro Kowar also use such a gun? Why did they use the guns? Were any of the Jewish people shot down or wounded?
- Who was the head of the 5th Police Station of Ukrainian Police? Who was the Commander of Ukrainian Police?
- Why was the witness's name and surname included in the report?

Please also provide the witness with the documents numbered 2 and 3 dated August 14, 1942 and ask him the following questions:

- Did the witness participate in the actions organized against Jewish people on August 14, 1942? Upon whose instructions was the action organised? What did it involve? How many people were shot down? How many people were wounded? Who did it? How many people and where were stopped? Where were they put in jail? What was the witness's role in the action? Did he use a gun?
- Did the witness draw up the report with number 2 personally? If no, whose paper was it? Why did the individual who prepared the report sign it with the name of Kalimun?
- Did he shoot one person down and wound another one during the action?

Please provide the witness with the documents numbered 4 and 5 and ask him the following questions:

4

- Did the witness participate in the actions organised against Jewish people on August 21 and 22, 1942? What did the actions involve? Where were the people having been stopped put in jail?
- Did he use a gun during the action? In what circumstances? Was anybody killed?
- Did the witness fire at Jewish people at that time?

Please provide the witness with the document numbered 6 and ask him the following questions:

- Was the request written by the witness himself? Is it his signature? Did the transfer of remuneration to "mother Anastasia Kalimon" deal with the witness's mother residing at that time in Komańcza?

Please provide the witness with the documents numbered 7 and 8 and ask him the following questions:

- Do the notifications of undertaking employment: of October 29, 1941 to the name of Ivan Kalimun and of June 24, 1944 to the name of Ivan Kalimon, deal with the witness?
- Were the signatures contained in them put by the witness?
- Why one of the surnames was Kalimun and the other one Kalimon?
- Can the witness show anyone having any knowledge in that regard?

Before hearing, please advice the witness of the contents of Article 233, Paragraph 1 of the Polish Criminal Code Act of June 6, 1997 (*Dziennik Ustaw* – Journal of Laws number 88, item 533) dealing with criminal liability for giving false testimony or for concealing the truth, and of the contents of Article 183, Paragraph 1 of the Polish Code of Criminal Procedure Act of June 6, 1997 (*Dziennik Ustaw* – Journal of Laws number 89, item 555) dealing with declining to give answers to questions where answering them could expose the witness or his next of kin to liability for an offence.

*Round seal with Polish National Emblem reading:*
The Institute of National Remembrance
Branch Commission for the Prosecution of Crimes against the Polish Nation
in Rzeszów

> *Rectangular stamp reading:*
> Head of
> Branch Commission for the Prosecution of Crimes against the Polish Nation in Rzeszów
> [*illegible signature*]
> Grzegorz Malisiewicz, Prosecutor

5

*Rectangular stamp reading:*
The Institute of National Remembrance
The Branch Commission for the Prosecution
of Crimes against the Polish Nation in Rzeszów


## Polish Act on Public Prosecutors' Office dated June 20, 1985 (unified text *Dziennik Ustaw* – Journal of Laws of 2002 number 21, item 206 as amended)


### Article 1 item 1

The public prosecutors' office shall be composed of the Prosecutor General and of public prosecutors of the common and military organizational units of the Public Prosecutors' Office as well as public prosecutors of the Institute of National Remembrance – Commission for the Prosecution of Crimes against the Polish Nation, subordinated to him.


## Polish Act on The Institute of National Remembrance – Commission for the Prosecution of Crime against the Polish Nation dated December 18, 1998 (*Dziennik Ustaw* – Journal of Laws number 155, item 1016 as amended)


### Article 1 point 1

The Act shall govern the registration, collection, keeping, elaborating, securing, and access to and publication of the documents of the organs of state security created and collected between 22 July 1944 and 31 July 19990, and the documents of the organs of security of the Third Reich and the Union of Soviet Socialist Republics concerning:

**letter a**

crimes perpetrated against persons of Polish nationality and Polish citizens of other ethnicity, nationalities in the period between 1 September 1939 and 31 July 1990:

- Nazi crimes,
- communist crimes,
- other crimes constituting crimes against peace, crimes against humanity or war crimes


### Article 4 point 1

The crimes referred to in Article 1 point 1 letter a) which, according to international law, are crimes against peace, crime against humanity or which are war crimes shall not be barred by the statute of limitations.

6

### Article 4 point 3

The regulations of acts and decrees issued before 7 December 1989 and providing for amnesty or abolition shall not apply to perpetrators of war crimes, crimes against humanity or communist crimes.

### Article 45 point 1

Investigations into cases of crimes listed in Article 1 point 1 letter a) shall be initiated and conducted by the public prosecutor of a branch commission.

### Article 45 point 2

As regards cases specified in Article 1 point 1 letter a., the public prosecutors of the Chief Commission for the Prosecution of Crimes against the Polish Nation and the branch commissions for the prosecution of crimes against the Polish nation shall hold the procedural rights provided for public prosecutors, also in cases subject to adjudication by courts martial.

### Article 50 point 1

The Chief Commission and branch commissions shall constitute organisational units of a prosecutor's office in the understanding of international agreements with other states binding the Republic of Poland on legal assistance and legal relations in civil, family, employment and criminal cases.

### Polish Act dated June 6, 1997 introducing the Criminal Code (*Dziennik Ustaw* – Journal of Laws number 88, item 554 as amended)

### Article 13 point 1

Upon application of binding penal provision:

instead of prescribed death penalty, the penalty to be adjudicated shall be that of deprivation of liberty for life.

### Polish Decree dated August 31, 1944 concerning the exercising of punishment for Nazi-Fascist criminals guilty of the murder or cruel treatment of the civilian population and prisoners, and for traitors to the Polish Nation, (*Dziennik Ustaw* – Journal of Laws dated 1946 number 69, item 377 as amended)

### Article 1 point 1

Whoever, aiding the authorities of the German state or the authorities of a state allied with it, participated in the commission of murders on civilians, military men or prisoners of war, shall be liable to the death penalty.



7

*Round seal with Polish National Emblem reading*
The Institute of National Remembrance
Branch Commission for the Prosecution of Crimes against the Polish Nation
in Rzeszów

> In conformity with the original document
> Rzeszów, March 4, 2008
> *Rectangular stamp reading:*
> The Head of Branch Commission for the Prosecution
> of Crimes against the Polish Nation in Rzeszów
> [*illegible signature*]
> Grzegorz Malisiewicz, Prosecutor

*****************************************************************************

I hereby certify that the translation above is true to the original Polish document that I have been presented with – Dorota Staniszewska-Kowalak, sworn translator in Warsaw.

Warsaw, April 7, 2008
Rep. No.  66/2008

SWORN TRANSLATOR
*Dorota Staniszewska-Kowalak*
ul. Bacha 7 m. 903
02-743 Warsaw
phone: 847-10-64

8

Oddziałowa Komisja Ścigania
Zbrodni Przeciwko Narodowi
Polskiemu w Rzeszowie

S 5/04/Zn                                              Rzeszów, dnia 4 marca 2008 roku

## WNIOSEK
### o udzielenie pomocy prawnej w sprawie karnej

Instytut Pamięci Narodowej – Oddziałowa Komisja Ścigania Zbrodni przeciwko Narodowi Polskiemu w Rzeszowie prowadzi śledztwo w sprawie:

1. zbrodni nazistowskiej popełnionej w dniu 11 maja 1942 roku we Lwowie polegającej na uczestnictwie w transportowaniu nieustalonej liczby osób narodowości żydowskiej, o nieustalonej tożsamości, do obozu pracy przymusowej dla Żydów w Płuhowej;
2. zbrodni nazistowskiej popełnionej w dniu 14 sierpnia 1942 roku we Lwowie polegającej na zabójstwie jednej osoby narodowości żydowskiej, o nieustalonej tożsamości i usiłowaniu dokonania zabójstwa jednej osoby narodowości żydowskiej, o nieustalonej tożsamości;
3. zbrodni nazistowskiej popełnionej w dniu 14 sierpnia 1942 roku we Lwowie w czasie akcji przeciwko ludności żydowskiej, podczas której dokonano zabójstwa 12 osób narodowości żydowskiej, o nieustalonej tożsamości i usiłowano dokonać zabójstwa 7 osób narodowości żydowskiej, o nieustalonej tożsamości oraz zatrzymano 2128 osób narodowości żydowskiej, o nieustalonej tożsamości;
4. zbrodni nazistowskiej popełnionej w dniu 20 sierpnia 1942 roku we Lwowie w czasie akcji przeciwko ludności żydowskiej, podczas której dokonano zabójstwa 14 osób narodowości żydowskiej, o nieustalonej tożsamości i usiłowano dokonać zabójstwa 6 osób narodowości żydowskiej, o nieustalonej tożsamości oraz zatrzymano 525 osób narodowości żydowskiej, o nieustalonej tożsamości;
5. zbrodni nazistowskiej popełnionej w dniu 22 sierpnia 1942 roku we Lwowie w czasie akcji przeciwko ludności żydowskiej, podczas której dokonano zabójstwa 12 osób narodowości żydowskiej, o nieustalonej tożsamości, usiłowano dokonać zabójstwa 3 osób narodowości żydowskiej, o nieustalonej tożsamości oraz zatrzymano 805 osób narodowości żydowskiej, o nieustalonej tożsamości,

to jest o czyn z artykułu 1 punkt 1 dekretu z dnia 31 sierpnia 1944 roku o wymiarze kary dla faszystowsko – hitlerowskich zbrodniarzy winnych zabójstw i znęcania się nad ludnością cywilną i jeńcami oraz dla zdrajców Narodu Polskiego (Dziennik Ustaw Numer 69, pozycja 377 z 1946 roku z późniejszymi zmianami) w związku z artykułem 1 punkt 1 litera a ustawy z dnia 18 grudnia 1998 roku o Instytucie Pamięci Narodowej – Komisji Ścigania Zbrodni przeciwko Narodowi Polskiemu (Dziennik Ustaw Numer 155 pozycja 1016 z późniejszymi zmianami).

W toku wykonywanych czynności uzyskano kserokopie poniższych dokumentów:

- dokument numer 1 stanowi raport Kierownika Komisariatu Ukraińskiej Policji skierowany do Dowódcy Ukraińskiej Policji z dnia 11 maja 1942 roku, w którym to kierownik tegoż Komisariatu meldował, że szeregowcy policji: Iwan Kalimun i Petro Kowar wystrzelili każdy po 6 sztuk amunicji podczas transportu Żydów ze Lwowa do Płuhowej,
- dokument numer 2 sporządzony został pismem ręcznym, datowany dnia 14.08.1942 roku. W raporcie tym osoba podpisana nazwiskiem Kalimun zameldowała, że w tym dniu około godziny 19$^{00}$ zastrzeliła jedną osobę i zraniła drugą podczas tzw. akcji przeciwko ludności żydowskiej,
- dokument numer 3 stanowi raport Kierownika V Komisariatu Ukraińskiej Policji do Dowódcy Ukraińskiej Policji z dnia 14.08.1942 roku. Wyżej wymieniony zameldował, że na terenie działalności Komisariatu zatrzymanych zostało 2128 Żydów, którzy skierowani zostali do punktu zbiorczego, 12 Żydów zastrzelono i 7 zraniono,
- dokument numer 4 stanowi raport Kierownika V Komisariatu Ukraińskiej Policji do Dowódcy Ukraińskiej Policji z dnia 21.08.1942 roku, w którym to wyżej wymieniony zameldował, że w tym dniu policjanci doprowadzili 525 Żydów do punktu zbiorczego i w czasie tej akcji zastrzelili 14 Żydów i zranili 6. Wśród tych policjantów, którzy używali broni palnej wystrzeliwując dwa naboje był Kalimun,
- dokument numer 5 stanowi raport sporządzony w dniu 22.08.1942 roku, w którym to Kierownik V Komisariatu Ukraińskiej Policji zameldował Dowódcy Ukraińskiej Policji, że doprowadzono 805 Żydów do punktu zbiorczego i podczas akcji zastrzelono 12 Żydów i 3 zraniono. Wśród policjantów, którzy używali broni był Iwan Kalimun, który wystrzelił dwa naboje,
- dokument numer 6 stanowi prośbę Iwana Kalimona z dnia 18.04.1944 roku o przekazanie jego wynagrodzenia w przypadku nieobecności we Lwowie matce Anastazji Kalimon zamieszkałej w Komańczy,
- dokumenty numer 7 i 8, które stanowią zgłoszenie o wstąpieniu do pracy Iwana Kalimuna i Iwana Kalimona.

Z powyższych dokumentów wynika, iż policjant z V Komisariatu Policji miasta Lwowa o nazwisku Iwan Kalimun brał udział w 1942 roku w akcjach przeciwko ludności żydowskiej we Lwowie.

W toku wykonywanych czynności ustalono, iż w Stanach Zjednoczonych Ameryki mieszka Johan Kalimon, policjant V Komisariatu Policji we Lwowie, który pełnił służbę w okresie od 1942 do 1944 roku.

W związku z powyższym zwracam się z uprzejmą prośbą o udzielenie pomocy prawnej poprzez przesłuchanie w charakterze świadka Pana Johana Kalimona, zamieszkałego 1539 Devonshire Drive, Troy Michigan 48098, Stany Zjednoczone Ameryki, posiadającego obywatelstwo amerykańskie odnośnie niżej podanych okoliczności:

- w jakiej miejscowości świadek zamieszkiwał do września 1939 roku, jak brzmiało wówczas jego nazwisko, czy w okresie II wojny światowej brzmienie to uległo przekształceniu i dlaczego (jednocześnie wyjaśniam, iż do akt śledztwa dołączony został odpis aktu urodzenia numer 9/1921, który

sporządzony został w Urzędzie Stanu Cywilnego w Komańczy, z którego wynika, iż Jan Kałymun urodził się 16 maja 1921 roku w Komańczy jako syn Teodora Kałymuna i Nastji Suszko),

- czym zajmował się przed wybuchem wojny, do jakiej uczęszczał szkoły, w jakiej miejscowości,
- z kim mieszkał w Polsce – imiona i nazwiska, kto żyje aktualnie w Polsce z członków jego rodziny i w jakiej miejscowości,
- czy posiada jakiekolwiek dokumenty – na przykład akty urodzenia rodziców, akty zgonów rodziców, świadectwa szkolne – wydane na swoje nazwisko, przed wybuchem II wojny światowej lub po jej zakończeniu,
- czy posiada jakiekolwiek pisma własnoręcznie sporządzone w okresie II wojny lub tuż po niej,
- kiedy i z jakiego powodu wyjechał do Lwowa,
- gdzie i z kim mieszkał we Lwowie,
- czy pełnił służbę w V Komisariacie Ukraińskiej Policji miasta Lwowa, od kiedy do kiedy, jaki posiadał stopień,
- na jakiej ulicy znajdował się ten komisariat, kto był jego komendantem, czy pamięta imiona i nazwiska innych policjantów z tego komisariatu, czy ma z nimi aktualnie kontakt,
- kiedy V Komisariat przekształcony został w VII Komisariat, czy zmieniła się jego siedziba, kto został wówczas komendantem VII Komisariatu,
- co należało do obowiązków świadka jako policjanta,
- czy pełnił służbę wraz ze świadkiem inny policjant o imieniu Iwan i podobnie brzmiącym nazwisku Kalimun,
- gdzie usytuowane było we Lwowie getto żydowskie, kiedy powstało, jak wyglądało ono wewnątrz, ile osób przebywało w getcie, kto był komendantem tegoż getta, jakie czynności w getcie wykonywali policjanci ukraińscy,
- czy świadek był w getcie, jakie posiada informacje odnośnie zbrodni popełnionych na szkodę osób narodowości żydowskiej w getcie, jakie panowały w getcie warunki życia dla Żydów,
- czy był świadkiem zabójstw osób narodowości żydowskiej w getcie, data zbrodni, ilość osób zabitych, nazwiska sprawców,
- czy świadek brał udział w akcjach przeprowadzanych we Lwowie w okresie 1942 roku przeciwko ludności żydowskiej, w jakich akcjach, na czyje polecenie, kiedy, na czym one polegały,
- jakie świadek posiada informacje odnośnie istniejącego obozu pracy przymusowej dla Żydów w Płuhowej, czy był w tej miejscowości i w tym obozie, jakie panowały tam warunki życia i pracy, ile osób narodowości żydowskiej tam pracowało,
- kto był komendantem obozu w Płuhowej, jakich zna innych policjantów pełniących służbę w tym obozie.

Proszę o okazanie świadkowi dokumentu oznaczonego numer 1 z 11 maja 1942 roku i zadanie wyżej wymienionych poniższych pytań dotyczących udziału Iwana Kalimuna w transporcie Żydów:

- czy w czasie pełnienia służby posiadał broń palną,
- czy zna Petro Kowara, czy pełnił z nim służbę w policji we Lwowie, czy posiada informacje, gdzie aktualnie w/w mieszka,
- czy świadek brał udział 11 maja 1942 roku w transporcie Żydów ze Lwowa do obozu w Płuhowej,
- czy używał broni i czy wystrzelił 6 sztuk amunicji, czy broni też używał Petro Kowar, w jakim celu używali tej broni, czy ktoś z Żydów został zabity lub zraniony,
- kto był kierownikiem V Komisariatu Ukraińskiej Policji, a kto dowódcą Ukraińskiej Policji,
- dlaczego wpisano w tym raporcie imię i nazwisko świadka.

Proszę o okazanie świadkowi dokumentu oznaczonego numerem 2 i 3 z 14 sierpnia 1942 roku i zadanie wyżej wymienionemu poniższych pytań:
- czy świadek brał udział w akcji  przeciwko ludności żydowskiej w dniu 14 sierpnia 1942 roku, na czyje polecenie została ona przeprowadzona, w jaki sposób przebiegała, ile osób zastrzelono, ile osób zostało rannych w czasie tej akcji, kto powyższego dokonał, ile osób i gdzie zostało zatrzymanych, gdzie zostały one osadzone, jaki był udział świadka w tej akcji, czy używał broni palnej,
- czy świadek sporządził raport numer 2 osobiście, jeżeli nie, to czyje jest to pismo, dlaczego osoba sporządzająca raport podpisała się nazwiskiem Kalimun,
- czy w czasie tej akcji zastrzelił jedną osobę, a drugą ranił.

Proszę o okazanie świadkowi dokumentów numer 4 i 5 i zadanie poniższych pytań:
- czy świadek brał udział w dniach 21 i 22 sierpnia 1942 roku w akcji przeciwko ludności żydowskiej, jak one przebiegały, gdzie osadzono osoby zatrzymane,
- czy  w czasie tej akcji używał broni, w jakich okolicznościach, czy został ktoś zabity,
- czy świadek strzelał wówczas do Żydów.

Proszę o okazanie świadkowi dokumentu numer 6 i zadanie poniższych pytań:
- czy powyższa prośba została napisana własnoręcznie przez świadka, czy jest to jego podpis, czy przekazanie „matce  Anastazji Kalimon” wynagrodzenia dotyczy matki świadka zamieszkałej wówczas w Komańczy,

Proszę o okazanie świadkowi dokumentów numer 7 i 8 i zadanie poniższych pytań:
- czy  zgłoszenia o wstąpieniu do pracy  z dnia 29 października 1941 roku sporządzone na nazwisko Iwana Kalimuna i z dnia 24 czerwca 1944 roku sporządzone na nazwisko Iwana Kalimona dotyczą świadka,
- czy powyższe podpisy sporządzone zostały przez wyżej wymienionego,
- dlaczego nazwisko  wpisane zostało raz Kalimun, a drugi raz Kalimon,

- czy świadek może wskazać osoby dysponujące wiedzą w powyższych sprawach.

Przed przesłuchaniem proszę pouczyć świadka o treści artykułu 233 paragraf 1 polskiej ustawy z dnia 6 czerwca 1997r. Kodeks karny (Dziennik Ustaw Numer 88, pozycja 533) o odpowiedzialności karnej za składanie fałszywych zeznań lub zatajenie prawdy oraz o treści artykułu 183 paragraf 1 polskiej ustawy z dnia 6 czerwca 1997 roku Kodeks postępowania karnego (Dziennik Ustaw Numer 89 pozycja 555) o prawie uchylenia się od odpowiedzi na pytania, jeżeli udzielenie jej mogłoby narazić świadka lub osobę dla niego najbliższą na odpowiedzialność za przestępstwo.

Naczelnik Oddziałowej Komisji
Ścigania Zbrodni przeciwko
Narodowi Polskiemu w Rzeszowie

prokurator Grzegorz Maliszewicz

### Ustawa z dnia 20 czerwca 1985 roku o Prokuraturze
### (tekst jednolity Dziennik Ustaw z 2002 roku Numer 21, pozycja 206
### z późniejszymi zmianami)

#### Artykuł 1 ustęp 1
Prokuraturę stanowią Prokurator Generalny oraz podlegli mu prokuratorzy powszechnych i wojskowych jednostek organizacyjnych prokuratury oraz prokuratorzy Instytutu Pamięci Narodowej – Komisji Ścigania Zbrodni przeciwko Narodowi Polskiemu.

### Ustawa z dnia 18 grudnia 1998 roku o Instytucie Pamięci Narodowej –
### Komisji Ścigania Zbrodni przeciwko Narodowi Polskiemu
### (Dziennik Ustaw Numer 155, pozycja 1016 z późniejszymi zmianami)

#### Artykuł 1 punkt 1
Ustawa reguluje: ewidencjonowanie, gromadzenie, przechowywanie, opracowywanie, zabezpieczanie, udostępnienie i publikowanie dokumentów organów bezpieczeństwa państwa, wytworzonych oraz gromadzonych od dnia 22 lipca 1944 roku do dnia 31 lipca 1990 roku, a także organów bezpieczeństwa Trzeciej Rzeszy Niemieckiej i Związku Socjalistycznych Republik Radzieckich, dotyczących:

#### litera a
popełnionych na osobach narodowości polskiej lub obywatelach polskich innych narodowości w okresie od dnia 1 września 1939 roku do dnia 31 lipca 1990 roku:
- zbrodni nazistowskich,
- zbrodni komunistycznych,
- innych przestępstw stanowiących zbrodnie przeciwko pokojowi, ludzkości lub zbrodnie wojenne.

#### Artykuł 4 ustęp 1
Zbrodnie, o których mowa w artykule 1 punkt 1 litera a, stanowiące według prawa międzynarodowego zbrodnie przeciwko pokojowi, ludzkości lub zbrodnie wojenne, nie ulegają przedawnieniu.

#### Artykuł 4 ustęp 3
W stosunku do sprawców zbrodni wojennych, zbrodni przeciwko ludzkości lub zbrodni komunistycznych nie stosuje się wydanych przed dniem 7 grudnia 1989 roku przepisów ustaw i dekretów, które przewidują amnestię lub abolicję.

#### Artykuł 45 ustęp 1
Śledztwo w sprawach o zbrodnie, o których mowa w artykule 1 punkt 1 litera a wszczyna i prowadzi prokurator oddziałowej komisji.

**Artykuł 45 ustęp 2**

Prokuratorom Głównej Komisji Ścigania Zbrodni przeciwko Narodowi Polskiemu i oddziałowych komisji ścigania zbrodni przeciwko Narodowi Polskiemu w sprawach określonych w artykule 1 punkt 1 litera a przysługują wszystkie uprawnienia prokuratora, także w sprawach podlegających orzecznictwu sądów wojskowych.

**Artykuł 50 ustęp 1**

Główna Komisja oraz oddziałowe komisje stanowią jednostki organizacyjne prokuratury w rozumieniu umów międzynarodowych, wiążących Rzeczpospolitą Polską z innymi państwami, o pomocy prawnej i stosunkach prawnych w sprawach cywilnych, rodzinnych, pracowniczych i karnych.

**Ustawa z dnia 6 czerwca 1997 roku przepisy wprowadzające Kodeks Karny (Dziennik Ustaw Numer 88, pozycja 554 z późniejszymi zmianami)**

**Artykuł 13 punkt 1**

Przy stosowaniu utrzymanych w mocy przepisów karnych:
zamiast przewidzianej kary śmierci orzeka się karę dożywotniego pozbawienia wolności.

**Dekret z dnia 31 sierpnia 1944 roku o wymiarze kary dla faszystowsko – hitlerowskich zbrodniarzy winnych zabójstw i znęcania się nad ludnością cywilną i jeńcami oraz dla zdrajców Narodu Polskiego (Dziennik Ustaw z 1946 roku Numer 69, pozycja 377 z późniejszymi zmianami)**

**Artykuł 1 punkt 1**

Kto, idąc na rękę władzy państwa niemieckiego lub z nim sprzymierzonego brał udział w dokonywaniu zabójstw osób spośród ludności cywilnej albo osób wojskowych lub jeńców wojennych,
    podlega karze śmierci.

Za zgodność

Rzeszów, dn. 0 4. 03. 2008

Naczelnik Oddziałowej Komisji
Ścigania Zbrodni przeciwko
Narodowi Polskiemu w Rzeszowie

prokurator Grzegorz Malisiewicz